**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNIVERSITY OF SOUTH FLORIDA
RESEARCH FOUNDATION, INC.,

     Plaintiff,

                          Case No.: 8:17-CV-01259-VMC-TBM

v.

WHIRLPOOL CORPORATION,            **JURY TRIAL DEMANDED**

     Defendant.

_____/

**DEFENDANT WHIRLPOOL CORPORATION'S ANSWER TO**
**AMENDED COMPLAINT, AFFIRMATIVE DEFENSES,**
**COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL**

     Defendant Whirlpool Corporation ("Whirlpool") submits the following Answer, Affirmative Defenses, Counterclaims, and Jury Demand in response to the August 29, 2017 Amended Complaint by Plaintiff University of South Florida Research Foundation ("USF-RF"):

## PARTIES

     1.     In answer to paragraph 1 of the Amended Complaint, Whirlpool lacks sufficient information to form a belief regarding the allegations of that paragraph and therefore denies them.

     2.     In answer to paragraph 2 of the Amended Complaint, Whirlpool admits that it is a Delaware corporation, that it has a distribution center in Orlando, Florida, and that Orlando is within this District.  Whirlpool denies the remaining allegations of paragraph 2 of the Amended Complaint.

## JURISDICTION AND VENUE

     3.     In answer to paragraph 3 of the Amended Complaint, Whirlpool admits

1

that USF-RF's Amended Complaint asserts a claim for patent infringement under Title 35 of the United States Code.  Whirlpool further admits that this Court has subject matter jurisdiction over USF-RF's patent infringement claims under 28 U.S.C. §§ 1331, 1338(a). Whirlpool denies the remaining allegations of paragraph 3 of the Amended Complaint.

4.      In answer to paragraph 4 of the Amended Complaint, Whirlpool does not challenge that venue in this District is appropriate under 28 U.S.C. § 1400(b) for this action.  Whirlpool also admits that its Orlando distribution center is within this District. Whirlpool denies the remaining allegations of paragraph 4 of the Amended Complaint.

## FACTUAL BACKGROUND

5.      In answer to paragraph 5 of the Amended Complaint, Whirlpool lacks sufficient information to form a belief regarding USF-RF's alleged ownership of U.S. Patent No. 7,306,115 ("the '115 patent") and therefore denies USF-RF's related allegations.  Whirlpool admits that the face of the '115 patent lists its title as "Volumetric Control Apparatus for Fluid Dispensing" and that a copy of what appears to be the '115 patent is attached as Exhibit A to the Amended Complaint.  Whirlpool denies the remaining allegations of paragraph 5 of the Amended Complaint.

6.      In answer to paragraph 6 of the Amended Complaint, Whirlpool admits that the face of the '115 patent lists its issuance date as December 11, 2007.  Whirlpool further admits that the face of the '115 patent identifies U.S. Provisional Application No. 60/320,131 as a related U.S. application and further states that the provisional application was filed on April 22, 2003.  Whirlpool lacks sufficient information to form a belief regarding the '115 patent's entitlement to priority from the provisional application and therefore denies USF-RF's related allegations.  Whirlpool denies that the '115 patent was duly and legally issued.  Whirlpool denies the remaining allegations of paragraph 6 of the Amended Complaint.

7.     In answer to paragraph 7 of the Amended Complaint, Whirlpool admits that it manufactures and sells refrigerators in the United States under brand names that include Amana, Jenn-Air, KitchenAid, Maytag, and Whirlpool.  Whirlpool denies the remaining allegations of paragraph 7 of the Amended Complaint.

8.     In answer to paragraph 8 of the Amended Complaint, Whirlpool admits that certain of the refrigerators that it manufactures and sells in the United States include a "Measured Fill" feature.  Whirlpool further admits that it has provided materials online that describe Measured Fill as "[a]llow[ing] you to select the exact amount of filtered water - in ounces, cups, or liters - that you need."  These materials further state that "[t]he dispenser will fill the container and automatically shut off when complete."  Whirlpool denies the remaining allegations of paragraph 8 of the Amended Complaint.

9.     In answer to paragraph 9 of the Amended Complaint, Whirlpool admits that it has sold refrigerators with a "Measured Fill" feature that included a flow sensor to monitor water flow.  Whirlpool denies the remaining allegations of paragraph 9 of the Amended Complaint.

10.     In answer to paragraph 10 of the Amended Complaint, Whirlpool admits that it has sold refrigerators with a "Measured Fill" feature both with and without a water flow sensor since 2011.  Whirlpool denies the remaining allegations of paragraph 10 of the Amended Complaint.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

11.     In answer to paragraph 11 of the Amended Complaint, USF-RF's assertion that "Whirlpool's Timed-Flow Device Products are not included within and are expressly excluded from the definition of Whirlpool's Infringement Products" does not require a response.  Whirlpool denies the remaining allegations of paragraph 11 of the Amended Complaint.  Whirlpool specifically denies that any of its refrigerators infringe

sf-3821150
112790385.1

any claim of the '115 patent.

12.     In answer to paragraph 12 of the Amended Complaint, Whirlpool does not understand the allegations of this paragraph, which are unclear, and therefore denies them.

**COUNT I**
**(Infringement of the '115 Patent)**

13.     In answer to paragraph 13 of the Amended Complaint, Whirlpool incorporates its responses to paragraphs 1 through 12 of the Amended Complaint.

14.     In answer to paragraph 14 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.

15.     In answer to paragraph 15 of the Amended Complaint, Whirlpool admits that some of its refrigerators with a Measured Fill feature allow the user to toggle among ounce, cup, and liter and to dispense water.  Whirlpool denies the remaining allegations of paragraph 15 of the Amended Complaint.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

16.     In answer to paragraph 16 of the Amended Complaint, Whirlpool admits that some of its refrigerators with a "Measured Fill" feature have valves.  Whirlpool lacks sufficient information to understand what allegedly corresponds to the "Measured Fill Device" and "smart valve" in its refrigerators with a Measured Fill feature and therefore denies USF-RF's related allegations.  Whirlpool denies the remaining allegations of paragraph 16 of the Amended Complaint.

17.     In answer to paragraph 17 of the Amended Complaint, Whirlpool admits that some of its refrigerators with a "Measured Fill" feature have valves and a water flow sensor.  Whirlpool lacks sufficient information to understand what allegedly corresponds to the "smart valve," "Measured Fill Device," and "flow meter" in its refrigerators with a

4

"Measured Fill" feature and therefore denies USF-RF's related allegations. Whirlpool denies the remaining allegations of paragraph 17 of the Amended Complaint. Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

18. In answer to paragraph 18 of the Amended Complaint, Whirlpool admits that some of its refrigerators with a Measured Fill feature include a dispenser control panel, valves, and a water flow sensor. Whirlpool lacks sufficient information to understand what allegedly corresponds to the "Measured Fill Device," "control unit," "user interface," "smart valve," and "flow meter" in its refrigerators with a Measured Fill feature and therefore denies USF-RF's related allegations. Whirlpool denies the remaining allegations of paragraph 18 of the Amended Complaint. Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

19. In answer to paragraph 19 of the Amended Complaint, Whirlpool admits that some of its refrigerators including a Measured Fill feature allow the user to toggle among ounce, cup, and liter using the dispenser control panel. Whirlpool lacks sufficient information to understand what allegedly corresponds to the "user interface," "Measured Fill Device," and "switching device" in its refrigerators with a Measured Fill feature and therefore denies USF-RF's related allegations. Whirlpool denies the remaining allegations of paragraph 19 of the Amended Complaint. Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

20. In answer to paragraph 20 of the Amended Complaint, Whirlpool admits that some of its refrigerators with a Measured Fill feature include a dispenser control panel. Whirlpool lacks sufficient information to understand what allegedly corresponds to the "user interface," "units select switch," "increment switching device" (or "Increment Switch"), "water dispensing activation pad," and "smart valve" in its refrigerators with a Measured Fill feature and therefore denies USF-RF's related

5

allegations.  Whirlpool denies the remaining allegations of paragraph 20 of the Amended Complaint.

21.     In response to paragraph 21 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.

22.     In response to paragraph 22 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.

23.     In response to paragraph 23 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.

24.     In answer to paragraph 24 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

25.     In answer to paragraph 25 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

26.     In answer to paragraph 26 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

27.     In answer to paragraph 27 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

28.     In answer to paragraph 28 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.  Whirlpool specifically denies that any of its refrigerators infringe any claim of the '115 patent.

29.     In answer to paragraph 29 of the Amended Complaint, Whirlpool denies the allegations of that paragraph.  Whirlpool specifically denies that any of its

sf-3821150
112790385.1

refrigerators infringe any claim of the '115 patent.

30.     Although a response is unnecessary to USF-RF's prayer for relief, Whirlpool denies that USF-RF is entitled to any relief in this action.

## USF-RF'S DEMAND FOR JURY TRIAL

31.     A response to USF-RF's demand for jury trial is unnecessary.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that it bears the burden of proof as to any affirmative defense, Whirlpool asserts the following affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure.  Whirlpool reserves the right to assert any other defenses that may be revealed during the course of discovery or through its investigation of USF-RF's claims.

## FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement of the '115 Patent)

32.     Whirlpool does not infringe and has not infringed any valid and enforceable claim of the '115 patent, whether literally or by equivalents.

33.     For example, each claim of the '115 patent recites a "control unit [that] opens the valve responsive to actuation of [an] incrementing switch."

34.     But none of Whirlpool's refrigerators with a Measured Fill feature has a control unit that opens a valve responsive to actuation of an incrementing switch.

35.     As at least one Use and Care Guide (W10422734A, available at https://www.whirlpool.com/content/dam/global/documents/201106/owners-manual-W10422734-RevA.pdf) states at page 12, the user may "dispense water" by either "press[ing] a sturdy glass against the dispenser paddle OR plac[ing] the glass below the water dispenser and press[ing] the MEASURED FILL button."

36.     Moreover, each claim of the '115 patent recites that "the number of

actuations of the incrementing switch determines the number of volumetric units selected by the units select switch to be dispensed."

37.     Additionally, each claim of the '115 patent recites that "the actuation of the incrementing switch . . . permit[s] the flow of water through the conduit until the control unit closes the valve responsive to the data from the flow meter indicating that the volume of water that has passed through the conduit is substantially equal to the volumetric unit selected on the units select switch in combination with the number of actuations of the incrementing switch."

38.     But none of Whirlpool's refrigerators with a Measured Fill feature dispenses a volume of water that is determined by the "number of actuations of [an] incrementing switch."

39.     Nor do Whirlpool refrigerators with a Measured Fill feature permit the flow of water through a conduit, "until [a] control unit closes [a] valve responsive to . . . data from [a] flow meter indicating that the volume of water that has passed through the conduit is substantially equal to the volumetric unit selected on [a] units select switch in combination with the number of actuations of an incrementing switch."

40.     As at least one Use and Care Guide (W10422734A, available at https://www.whirlpool.com/content/dam/global/documents/201106/owners-manual-W10422734-RevA.pdf) states at page 12, a user may "[p]ress the LOCK and OPTION buttons to adjust the volume as desired."  This same guide also states at page 12, "The LOCK button increases the volume, and the OPTIONS button lowers the volume."

## SECOND AFFIRMATIVE DEFENSE
### (Invalidity of the '115 Patent)

41.     One or more claims of the '115 patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C.

sf-3821150
112790385.1

§§ 101, 102, 103, and 112.

42. For example, the claims of the '115 patent merely combine prior art elements according to known methods to yield predictable results and therefore are invalid for obviousness.

43. Apparatuses for dispensing fluid water in preselected volumetric quantities from a domestic water delivery system were well known in the art before the '115 patent's priority date.

44. As the '115 patent itself acknowledges, measuring implements known in the art were fabricated to measure and deliver a preset volume of fluid as determined by each individual measuring implement before the alleged invention(s) of the '115 patent.

45. As the '115 patent also acknowledges, systems were known in the art for supplying preset quantities of liquids and for metering fluid flow from a source before the alleged invention(s) of the '115 patent.

46. As the '115 patent also acknowledges, flow meter systems known in the art presented the flow measurement to a user before the alleged invention(s) of the '115 patent.

47. A 2002 book entitled "Vending Machines" by Kerry Segrave confirms the lack of novelty or the obviousness of the alleged invention(s) of the '115 patent. For example, at page 204, the book states:

> In 1992, there were 22 makers of water [vending machines] participating in the voluntary [National Automatic Merchandising Association] certification program.
>
> Founded that same year was Fort[] Worth, Texas-based Water Point Systems (WP). A year later, the blue chip firm Cadbury Schweppes allowed WP to install its purified water [vending machines] bearing the Canada Dry trademark. Use of that trademark gave WP a major competitive advantage in the rapidly growing market for vending machines that filtered, purified, and disinfected regular city tap water, water many neighborhood residents

> no longer trusted.  Basically, the machines made bottled
> water right insider the machine, with customers able to fill
> up their own containers at 25 to 50 cents per gallon.

48.     The 2002 "Vending Machines" book is prior art to the '115 patent.

49.     As yet another example, U.S. Patent No. 4,469,150 ("Grimaldi") confirms the lack of novelty or the obviousness of the alleged invention(s) of the '115 patent. Grimaldi discloses "a dispenser for automatically dispensing into receptacles of variable dimensions, a very accurate volume of liquid stored in bulk form in at least one tank." (Grimaldi at Abstract.)  The Grimaldi patent issued on September 4, 1984.

50.     Grimaldi (at col. 2, lines 60-63) explains that the liquid dispensed may be water:

> The dispensing apparatus according to the invention
> allow[s] retail sale of liquid foods and beverages such as
> mineral or spring water, wine, soft drinks, etc. . . . . in take-
> away recipients belonging to the customer, which may be
> of various shapes and capacities.

51.     Grimaldi (at col. 3, lines 20-30) also describes the use of a volume sensor to enable a user to choose the quantity of fluid that the user desires:

> According to a second embodiment, a dispensing apparatus
> according to the invention is equipped with a volume
> sensor which may measure any volume by emitting pulses
> of which the number is proportional to the volume
> delivered, the precision then being equal to the elementary
> volume represented by a pulse which may be small enough
> to comply with the necessary precision requirements. This
> second embodiment enables the client to choose, without
> restriction, the quantity which he desires and which may be
> less than the capacity of the recipient.

52.     Grimaldi (at col. 5, lines 56-6:5) also describes that the total volume of liquid delivered to the user may correspond to the number of times that the user presses a button:

> According to a first variant, the apparatus automatically
> delivers a determined dose which corresponds to the
> volume of the measuring device 4 each time the customer
> presses on the button 21.

10

> If the customer's recipient has a volume equal to several doses, the customer may press on the button 21 several times.  At the end of the cycle, the apparatus delivers one ticket which indicates the total volume delivered and/or the price of this total volume.
>
> According to a second variant, the apparatus is preprogrammable by the customer or by the store keeper.  It comprises programming means enabling the number of desired doses to be recorded, this number corresponding to the number of times that the button 21 is pressed.  After which the apparatus automatically effects all operations and it delivers one ticket indicating the total volume delivered and/or the total price to be paid.

53.     The Grimaldi patent is prior art to the '115 patent.

54.     As still another example, U.S. Patent No. 6,432,300 ("Larkner") confirms the lack of novelty or the obviousness of the alleged invention(s) of the '115 patent.  Larkner discloses a "water purification system for purifying water through a water flow path."  (Larkner at Abstract.)  The Larkner patent issued on August 13, 2002.

55.     Larkner describes a flow control system for controlling the volume of purified water dispensed from an outlet.  The user can input the desired volume of purified water to be dispensed from the outlet:

> A flow control system is provided controlling a volume of purified water dispensed from the outlet.  The flow control system includes an input device configured to allow a user to input a desired volume of purified water to be dispensed from the outlet . . . .

(Larkner at Abstract.)

56.     Larkner also describes a sensing device to determine the volume of purified water being dispensed from the outlet:

> The flow control system includes . . . a sensing device coupled with the electronic input device and operative to determine the volume of purified water being dispensed from the outlet.

(Larkner at Abstract.)

sf-3821150
112790385.1

57.   Larkner further describes a flow regulation device that stops the discharge of purified water at the outlet when the desired volume of purified water has been reached:

> A flow regulation device is coupled with the flow control system and operative to stop the discharge of purified water at the outlet upon reaching the desired volume of purified water.

(Larkner at Abstract.)

58.   The Larkner patent is prior art to the '115 patent.

59.   Whirlpool's development of the accused Measured Fill feature predates the alleged invention(s) of the '115 patent by several months, if not longer.

60.   The '115 patent claims priority to a U.S. provisional application filed on April 22, 2003.

61.   Whirlpool engineers conceived of the Measured Fill feature by no later than 2002.

62.   For example, Whirlpool engineers had prepared mock-ups of the Measured Fill concept, including the selection of ounces or cups and the adjustment of the desired volume upwards or downwards, by no later than October 2002.

63.   The 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, and Whirlpool's prior invention of its Measured Fill feature were not considered during prosecution of the '115 patent.

64.   The 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, and Whirlpool's prior invention of its Measured Fill feature were not cited during prosecution of the '115 patent.

65.   The 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, and Whirlpool's prior invention of its Measured Fill feature are not listed on the face of the '115 patent as references or information considered or cited during

12

prosecution of the '115 patent.

66.     Upon information and belief, the listed inventor on the '115 patent, Timothy Beachy, was unaware of the 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, or Whirlpool's prior invention of its Measured Fill feature before the '115 patent issued.

### THIRD AFFIRMATIVE DEFENSE
#### (Estoppel)

67.     USF-RF's requested relief is barred, in whole or in part, by the doctrine of estoppel, including the doctrine of prosecution history estoppel arising from the patentee's actions, representations, and conduct before the U.S. Patent and Trademark Office during prosecution of the '115 patent.  These actions, representations, and conduct include the patentee's amendments and remarks in its May 25, 2007 Amendment during prosecution of the '115 patent.

### FOURTH AFFIRMATIVE DEFENSE
#### (Limitation on Recovery of Costs)

68.     USF-RF is precluded from seeking recovery of costs under 35 U.S.C. § 284.

### FIFTH AFFIRMATIVE DEFENSE
#### (Limitation on Damages)

69.     USF-RF's claims for relief and prayer for damages are limited by 35 U.S.C. §§ 286, 287.

### SIXTH AFFIRMATIVE DEFENSE
#### (Adequate Remedy at Law)

70.     USF-RF has an adequate remedy at law, and no basis exists for granting equitable relief.

### COUNTERCLAIMS

Under Rule 13 of the Federal Rules of Civil Procedure, Defendant and

Counterclaim Plaintiff Whirlpool Corp. ("Whirlpool") raises the following counterclaims against Plaintiff and Counterclaim Defendant University of Florida Research Foundation, Inc. ("USF-RF"):

## THE PARTIES

1.       Whirlpool is a Delaware corporation with its principal place of business at 2000 N. M-63, Benton Harbor, Michigan, 49022-2692.

2.       On information and belief, USF-RF is a Florida not-for-profit corporation with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

3.       These counterclaims arise under federal statutory law, including 35 U.S.C. § 271 *et seq.* and 28 U.S.C. § 2201.  Accordingly, this Court has subject matter jurisdiction over Whirlpool's counterclaims under 28 U.S.C. §§ 1331, 1338(a).

4.       Venue over Whirlpool's counterclaims is appropriate in this District under 28 U.S.C. §§ 1391(b),(c).  To the extent that venue is proper under 28 U.S.C. § 1400(b) for USF-RF's claims in the Amended Complaint, venue also is appropriate under that same section for Whirlpool's counterclaims.

5.       Jurisdiction and venue also are appropriate in this District because USF-RF has sought the benefit of this forum for this litigation.

## ALLEGATIONS

6.       On August 29, 2017, USF-RF filed an Amended Complaint in this Court alleging that Whirlpool has infringed and is infringing U.S. Patent No. 7,306,115 ("the '115 patent").

7.       In its Amended Complaint, USF-RF alleges that it owns by assignment the entire right, title, and interest in the '115 patent.

8.       Whirlpool denies that it is infringing or has infringed any valid and

enforceable claim of the '115 patent.

9.      Whirlpool also asserts that one or more claims of the '115 patent is valid or unenforceable.

10.     Accordingly, there is an actual, immediate, and justiciable controversy between USF-RF and Whirlpool regarding the infringement, validity, and unenforceability of the '115 patent.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '115 Patent)

11.     Whirlpool repeats and re-alleges paragraphs 1-10 of these Counterclaims.

12.     Whirlpool has not infringed and does not infringe any valid and enforceable claim of the '115 patent, whether literally or by equivalents.

13.     For example, each claim of the '115 patent recites a "control unit [that] opens the valve responsive to actuation of [an] incrementing switch."

14.     But none of Whirlpool's refrigerators with a Measured Fill feature has a control unit that opens a valve responsive to actuation of an incrementing switch.

15.     As at least one Use and Care Guide (W10422734A, available at https://www.whirlpool.com/content/dam/global/documents/201106/owners-manual-W10422734-RevA.pdf) states at page 12, the user may "dispense water" by either "press[ing] a sturdy glass against the dispenser paddle OR plac[ing] the glass below the water dispenser and press[ing] the MEASURED FILL button."

16.     Moreover, each claim of the '115 patent recites that "the number of actuations of the incrementing switch determines the number of volumetric units selected by the units select switch to be dispensed."

17.     Additionally, each claim of the '115 patent recites that "the actuation of the incrementing switch . . . permit[s] the flow of water through the conduit until the

control unit closes the valve responsive to the data from the flow meter indicating that the volume of water that has passed through the conduit is substantially equal to the volumetric unit selected on the units select switch in combination with the number of actuations of the incrementing switch."

18.     But none of Whirlpool's refrigerators with a Measured Fill feature dispenses a volume of water that is determined by the "number of actuations of [an] incrementing switch."

19.     Nor do Whirlpool refrigerators with a Measured Fill feature permit the flow of water through a conduit, "until [a] control unit closes [a] valve responsive to . . . data from [a] flow meter indicating that the volume of water that has passed through the conduit is substantially equal to the volumetric unit selected on [a] units select switch in combination with the number of actuations of an incrementing switch."

20.     As at least one Use and Care Guide (W10422734A, available at https://www.whirlpool.com/content/dam/global/documents/201106/owners-manual-W10422734-RevA.pdf) states at page 12, a user may "[p]ress[es] the LOCK and OPTION buttons to adjust the volume as desired."  This same guide also states at page 12, "The LOCK button increases the volume, and the OPTIONS button lowers the volume."

21.     Whirlpool-manufactured refrigerators lacking a flow meter do not infringe any claim of the '115 patent.

22.     USF-RF does not contend that Whirlpool-manufactured refrigerators lacking a flow meter infringe any claim of the '115 patent.

23.     As a result, Whirlpool is entitled to judgment from this Court that it does not infringe the '115 patent.

24.     When USF-RF filed its Amended Complaint, it knew or should have

16

known that Whirlpool did not infringe the '115 patent.

25.     On information and belief, before USF-RF filed its Amended Complaint, none of its attorneys or agents had purchased or personally tested any Whirlpool refrigerator with a "Measured Fill" feature.

26.     On information and belief, before USF-RF filed its Amended Complaint, none of its attorneys or agents had performed a teardown of an actual Whirlpool refrigerator with a "Measured Fill" feature.

27.     On information and belief, before USF-RF filed its Amended Complaint, its attorneys or agents had reviewed a "Job Aid" document, entitled "Fast Fill Dispenser System" and bearing Part No. 8178501A ("Whirlpool Job Aid").

28.     The Whirlpool Job Aid document (at page ii) bears a copyright date of 2005.

29.     The copyright date of the Whirlpool Job Aid document is at least eleven years before the filing date of the Amended Complaint.

30.     On information and belief, the 2005 Whirlpool Job Aid was the only Job Aid document on which USF-RF's attorneys and agents relied before filing the Amended Complaint.

31.     On information and belief, before USF-RF filed its Amended Complaint, its attorneys or agents were aware of and had read the quoted text in paragraph 15 of these Counterclaims or almost identical text, whether from the same Use and Care guide or a different Whirlpool Use and Care Guide.

32.     On information and belief, before USF-RF filed its Amended Complaint, its attorneys or agents were aware of and had read the quoted text in paragraph 20 of these Counterclaims or almost identical text, whether from the same Use and Care guide or a different Whirlpool Use and Care Guide.

sf-3821150
112790385.1

33.     This first counterclaim presents exceptional circumstances within the meaning of 35 U.S.C. § 285, and Whirlpool should be entitled to its reasonable attorney's fees and costs at the conclusion of this litigation.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '115 Patent)

34.     Whirlpool repeats and re-alleges paragraphs 1-33 of these Counterclaims.

35.     One or more claims of the '115 patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C. §§ 101, 102, 103, and 112.

36.     For example, the claims of the '115 patent merely combine prior art elements according to known methods to yield predictable results and therefore are invalid for obviousness.

37.     Apparatuses for dispensing fluid water in preselected volumetric quantities from a domestic water delivery system were well known in the art before the '115 patent's priority date.

38.     As the '115 patent itself acknowledges, measuring implements known in the art were fabricated to measure and deliver a preset volume of fluid as determined by each individual measuring implement before the alleged invention(s) of the '115 patent.

39.     As the '115 patent also acknowledges, systems were known in the art for supplying preset quantities of liquids and for metering fluid flow from a source before the alleged invention(s) of the '115 patent.

40.     As the '115 patent also acknowledges, flow meter systems known in the art presented the flow measurement to a user before the alleged invention(s) of the '115 patent.

41.     A 2002 book entitled "Vending Machines" by Kerry Segrave confirms the

lack of novelty or the obviousness of the alleged invention(s) of the '115 patent.  For example, at page 204, the book states:

> In 1992, there were 22 makers of water [vending machines] participating in the voluntary [National Automatic Merchandising Association] certification program.
>
> Founded that same year was Fort[] Worth, Texas-based Water Point Systems (WP).  A year later, the blue chip firm Cadbury Schweppes allowed WP to install its purified water [vending machines] bearing the Canada Dry trademark.  Use of that trademark gave WP a major competitive advantage in the rapidly growing market for vending machines that filtered, purified, and disinfected regular city tap water, water many neighborhood residents no longer trusted.  Basically, the machines made bottled water right insider the machine, with customers able to fill up their own containers at 25 to 50 cents per gallon.

42.     The 2002 "Vending Machines" book is prior art to the '115 patent.

43.     As yet another example, U.S. Patent No. 4,469,150 ("Grimaldi") confirms the lack of novelty or the obviousness of the alleged invention(s) of the '115 patent. Grimaldi discloses "a dispenser for automatically dispensing into receptacles of variable dimensions, a very accurate volume of liquid stored in bulk form in at least one tank." (Grimaldi at Abstract.)  The Grimaldi patent issued on September 4, 1984.

44.     Grimaldi (at col. 2, lines 60-63) explains that the liquid dispensed may be water:

> The dispensing apparatus according to the invention allow retail sale of liquid foods and beverages such as mineral or spring water, wine, soft drinks, etc. . . ., in take-away recipients belonging to the customer, which may be of various shapes and capacities.

45.     Grimaldi (at col. 3, lines 20-30) also describes the use of a volume sensor to enable a user to choose the quantity of fluid that the user desires:

> According to a second embodiment, a dispensing apparatus according to the invention is equipped with a volume sensor which may measure any volume by emitting pulses of which the number is proportional to the volume

> delivered, the precision then being equal to the elementary
> volume represented by a pulse which may be small enough
> to comply with the necessary precision requirements. This
> second embodiment enables the client to choose, without
> restriction, the quantity which he desires and which may be
> less than the capacity of the recipient.

46.     Grimaldi (at col. 5, lines 56-6:5) also describes that the total volume of

liquid delivered to the user may correspond to the number of times that the user presses a

button:

> According to a first variant, the apparatus automatically
> delivers a determined dose which corresponds to the
> volume of the measuring device 4 each time the customer
> presses on the button 21.
>
> If the customer's recipient has a volume equal to several
> doses, the customer may press on the button 21 several
> times.  At the end of the cycle, the apparatus delivers one
> ticket which indicates the total volume delivered and/or the
> price of this total volume.
>
> According to a second variant, the apparatus is
> preprogrammable by the customer or by the store keeper.
> It comprises programming means enabling the number of
> desired doses to be recorded, this number corresponding to
> the number of times that the button 21 is pressed.  After
> which the apparatus automatically effects all operations and
> it delivers one ticket indicating the total volume delivered
> and/or the total price to be paid.

47.     The Grimaldi patent is prior art to the '115 patent.

48.     As still another example, U.S. Patent No. 6,432,300 ("Larkner") confirms

the lack of novelty or the obviousness of the alleged invention(s) of the '115 patent.

Larkner discloses a "water purification system for purifying water through a water flow

path." (Larkner at Abstract.)  The Larkner patent issued on August 13, 2002.

49.     Larkner describes a flow control system for controlling the volume of

purified water dispensed from an outlet.  The user can input the desired volume of

purified water to be dispensed from the outlet:

> A flow control system is provided controlling a volume of
> purified water dispensed from the outlet.  The flow control

> system includes an input device configured to allow a user
> to input a desired volume of purified water to be dispensed
> from the outlet . . . .

(Larkner at Abstract.)

50. Larkner also describes a sensing device to determine the volume of

purified water being dispensed from the outlet:

> The flow control system includes . . . a sensing device
> coupled with the electronic input device and operative to
> determine the volume of purified water being dispensed
> from the outlet.

(Larkner at Abstract.)

51. Larkner further describes a flow regulation device that stops the discharge

of purified water at the outlet when the desired volume of purified water has been

reached:

> A flow regulation device is coupled with the flow control
> system and operative to stop the discharge of purified water
> at the outlet upon reaching the desired volume of purified
> water.

(Larkner at Abstract.)

52. The Larkner patent is prior art to the '115 patent.

53. Whirlpool's development of the accused Measured Fill feature predates

the alleged invention(s) of the '115 patent by several months, if not longer.

54. The '115 patent claims priority to a U.S. provisional application filed on

April 22, 2003.

55. Whirlpool engineers conceived of the Measured Fill feature by no later

than 2002.

56. For example, Whirlpool engineers had prepared mock-ups of the

Measured Fill concept, including the selection of ounces or cups and the adjustment of

the desired volume upwards or downwards, by no later than October 2002.

sf-3821150
112790385.1

57.     The 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, and Whirlpool's prior invention of its Measured Fill feature were not considered during prosecution of the '115 patent.

58.     The 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, and Whirlpool's prior invention of its Measured Fill feature were not cited during prosecution of the '115 patent.

59.     The 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, and Whirlpool's prior invention of its Measured Fill feature are not listed on the face of the '115 patent as references or information considered or cited during prosecution of the '115 patent.

60.     Upon information and belief, the listed inventor on the '115 patent, Timothy Beachy, was unaware of the 2002 "Vending Machines" book, the Grimaldi patent, the Larkner patent, or Whirlpool's prior invention of its Measured Fill feature before the '115 patent issued.

61.     Whirlpool is entitled to judgment from this Court that one or more claims of the '115 patent is invalid.

62.     When USF-RF filed its Amended Complaint, it knew or should have known that one or more claims of the '115 patent was invalid.

63.     Before USF-RF filed its Amended Complaint, its attorneys and agents were aware of the 2002 "Vending Machines" book.

64.     Before USF-RF filed its Amended Complaint, its attorneys and agents were aware of the possibility that Whirlpool's development of its Measured Fill feature predated the alleged invention(s) of the '115 patent.

65.     Nevertheless, USF-RF filed its Amended Complaint on August 29, 2017.

66.     This second counterclaim presents exceptional circumstances within the

meaning of 35 U.S.C. § 285, and Whirlpool should be entitled to its reasonable attorney's fees and costs at the conclusion of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff Whirlpool asks that the Court enter judgment in its favor and against Plaintiff and Counterclaim Defendant USF-RF and grant the following relief:

A.  A declaration that Whirlpool does not infringe, whether literally or by equivalents, any valid and enforceable claim of the '115 patent;

B.  A declaration that the '115 patent is invalid or unenforceable;

C.  Dismissal of all of USF-RF's claims against Whirlpool with prejudice;

D.  A declaration that USF-RF take nothing by way of its Amended Complaint;

E.  An order awarding Whirlpool its costs under 35 U.S.C. § 284 or Rule 54(d) of the Federal Rules of Civil Procedure;

F.  An order finding this case to be exceptional under 35 U.S.C. § 285 and awarding Whirlpool its attorney's fees and costs and pre-judgment interest; and

G.  Such further relief for Whirlpool as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Whirlpool demands a jury trial on all issues so triable.

Dated:  September 12, 2017             /s/ William G. Giltinan

Richard S.J. Hung                     William G. Giltinan
Trial Counsel                         Florida Bar No. 27810
Admitted *pro hac vice*               Chris W. Altenbernd
Barbara N. Barath                     Florida Bar No. 197394
Admitted *pro hac vice*               Kevin P. McCoy
MORRISON & FOERSTER LLP               Florida Bar No. 0036225
425 Market Street                     CARLTON FIELDS JORDEN BURT, P.A.
San Francisco, California  94105      4221 W. Boy Scout Blvd., Suite 1000
Tel:    (415) 268-7000                Tampa, Florida  33601

| | |
|---|---|
| Fax:   (415) 268-7522 | Tel:   (813) 223-7000 |
| rhung@mofo.com | Fax:   (813) 229-4133 |
| bbarath@mofo.com | wgiltinan@carltonfields.com |
| | caltenbernd@carltonfields.com |
| | kmccoy@carltonfields.com |

Attorneys for Defendant
WHIRLPOOL CORPORATION

sf-3821150
112790385.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 12, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause service on all parties of record.  I further certify that I served the foregoing on the following non-CM/ECF users: None.

*/s/ William G. Giltinan*
William G. Giltinan
